# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:22-CR-098(3)** |
| **Plaintiff,** | |
| vs. | **JUDGE SARAH D. MORRISON** |
| **CHARLES L. JACKSON,** a/k/a "Apollo," | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Memorandum for Charles L. Jackson's upcoming sentencing hearing. The Government (and Jackson) agree with the factual findings and guideline calculations from the Presentence Investigation Report, which yields a sentencing range of 51–60 months (capped at 60 months by statute). The Government submits that an appropriate sentence falls within that range and respectfully recommends a sentence of **51 months of imprisonment**, to be followed by a three-year term of supervised release.

## I. BACKGROUND

On June 14, 2022, the Grand Jury returned a one-count Indictment against Charles Jackson and four other defendants, which charged them with conspiracy to deal in firearms without a license. PSR, ECF No. 82, ¶¶ 1-2. On September 6, 2022, Jackson pled guilty to that charge pursuant to a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). *Id.* at ¶ 4.

Jackson's guilty plea stemmed from a months-long investigation conducted by the ATF into an illegal firearm-trafficking ring. *Id.* at ¶¶ 12-29. Jackson and three individuals from Cleveland worked together with two men from central Ohio to unlawfully purchase and resell 114 handguns on the black market. *Id.* at ¶ 29. Throughout the conspiracy, Jackson was prohibited by law from receiving any firearms given his pending felony indictment in New York. *Id.* at ¶ 17. At least one other member of this conspiracy was also prohibited by law from receiving or possessing any firearms given his prior felony convictions. *Id.* Despite these prohibitions, as well as the prohibition on dealing in firearms without a federal firearms license, Jackson and his conspirators bought and resold scores of handguns with near impunity for months on end, exchanging tens of thousands of dollars in the process. *Id.* at ¶¶ 12-29. During that time, Jackson traveled to central Ohio six times to take delivery of the firearms prior to reselling them in Cleveland and New York. *Id.* at ¶¶ 18-22, 26-27. Members of the conspiracy even enlisted innocent third parties to conduct straw purchases of firearms in a clumsy effort to avoid detection by law enforcement. *Id.* at ¶¶ 20, 22. Fortunately, the ATF interceded and dismantled the firearm-trafficking ring in the Spring of 2022 through a series of search warrants, undercover firearm sales, and arrests.

After Jackson was indicted, the parties entered into a binding plea agreement under Rule 11(c)(1)(C). *Id.* at ¶ 4. That agreement calls for a sentence of between 27–51 months of imprisonment, to be followed by a three-year term of supervised release. *Id.* at ¶ 5.

On November 23, 2022, the Probation Officer released Jackson's Final PSR. The Probation Officer calculated a Total Offense Level of 23 and a Criminal History Category of II, which yields a sentencing range of 51–60 months of imprisonment. *Id.* at ¶ 101. Neither party has lodged any objections to the PSR.

## II. LEGAL STANDARDS

After *Booker v. United States*, 543 U.S. 220 (2005), district courts must engage in a three-step sentencing procedure. Courts must first determine the applicable guidelines range, then consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range—along with all the factors listed in 18 U.S.C. § 3553(a)—to determine what sentence to impose. The central command in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in § 3553(a).

## III. ANALYSIS

### A. The Applicable Guidelines Range

The Probation Officer calculated a Total Offense Level of 23 and a Criminal History Category of II, resulting in a guidelines range of 51–60 months of imprisonment. PSR, ¶ 101. Neither party has objected to those calculations, so the Court should adopt them at the time of sentencing.

### B. Possible Departures from the Applicable Guidelines Range

The Probation Officer did not identify any factors that would warrant a departure from the applicable guidelines range. *Id.* at ¶ 114. The Government agrees that no departures are warranted.

3

### C.  Consideration of the Sentencing Factors from 18 U.S.C. § 3553(a)

Finally, the Court must consider the applicable guidelines range alongside the sentencing factors from 18 U.S.C. § 3553(a) to fashion a sentence that is sufficient, but not greater than necessary, to meet Congress's sentencing goals.  Nothing about this case takes it outside the "heartland" of the firearm guideline from § 2K2.1.  As such, a low-end sentence of 51 months is appropriate.  *United States v. Focia*, 869 F.3d 1269, 1287–88 (11th Cir. 2017) (affirming 51-month sentence for firearm trafficker who resold between five and twenty-seven guns).

#### 1.  The Nature and Circumstances of the Offense

The nature and circumstances of the offense are both serious and troubling.  Jackson, who was already under a seventeen-count felony indictment stemming from an armed standoff with the police, unlawfully conspired with five other individuals to traffic hundreds of handguns on the black market.  Jackson worked closely with his conspirators to purchase 114 handguns,[1] which they later resold in Cleveland, Rochester, New York, and elsewhere.  To make matters worse, Jackson and his conspirators sold those handguns to individuals whom they knew or had reason to believe could not lawfully possess those guns.  Law enforcement officials are just now beginning to recover some of those handguns at the scenes of other crimes, and more recoveries are expected in the weeks, months, and years ahead.  Sadly, there is no precise measurement for the acute harm that Jackson and his conspirators will have inflicted on America's communities.

---

[1] In truth, Jackson and his conspirators attempted to purchase 130 handguns for resale, but the final 16 handguns were recovered as part of an undercover buy/bust.  PSR, ¶¶ 24-27.

This is no laughing matter, and it's certainly not a simple regulatory offense, as the defendant will surely claim. Just yesterday, researchers released the results of a study of all firearm deaths from 1990 to the present and determined that the "U.S. gun death rate last year hit its highest mark in nearly three decades." Associated Press, *U.S. Gun Death Rates Hit Highest Levels in Decades, Study Says*, Politico (Nov. 29, 2022), https://www.politico.com/news/2022/11/29/gun-death-rates-highest-levels-00071285. Last year alone, firearm-deaths claimed over 47,000 lives in America, "the most in at least 40 years." *Id.* More Americans were killed by firearms last year than in the Revolutionary War (4,435); the War of 1812 (2,260); the Indian Wars (1,000); the Mexican War (13,283); the Spanish-American War (2,446); the Persian Gulf War (1,565); and the Global War on Terror (6,852) combined.

Communities like Cleveland and Rochester continue to suffer the most from gun violence. Put simply, racial differences in U.S. gun deaths persist, with the highest homicide rates occurring "in young Black men" and "in cities." *Id.* The people suffering in those communities don't need a study to tell them what they already know, however: "We have to try and cease this violence. It's a Sunday morning; everyone should be at church, not out here shooting each other." Stephanie Duprey, *With 53, Rochester at Highest Homicide Rate in Nearly a Decade*, Rochester News 10 (July 28, 2022), https://www.whec.com/archive/with-53-rochester-at-highest-homicide-rate-in-nearly-a-decade/ (quoting Rochester Police Capt. Frank Umbrino). It's hard to cease the violence, and it's hard to stop the shootings, when people like Charles Jackson opt to profit from black-market firearm sales.

5

### 2. The History and Characteristics of the Defendant

Jackson's history and characteristics point to the same result and merit a within-guidelines sentence. Jackson, who is twenty-eight years old, has already amassed eight adult criminal convictions, including convictions for possession of drugs and drug paraphernalia, trespassing, and malicious injury to animals, to name a few. PSR, ¶¶ 51-57. Given the lenient sentences imposed in most of those cases, they collectively scored just three criminal history points. *Id.* at ¶ 59.

Jackson's *indicted* conduct is far more troubling and still fair game when considering the § 3553(a) factors. *See United States v. Politano*, 522 F.3d 69, 74–75 (1st Cir. 2008) (affirming above-guidelines sentence for firearm trafficker based, in part, on district court's concern over defendant's "unresolved charges"). Jackson's charges in Genesee County, New York, stem from a 2020 traffic stop during which officers observed drugs in his car. PSR, ¶ 61. Rather than comply with the officers' commands to exit the vehicle, Jackson yelled, "I ain't being detained." *Id.* He then sped off in his car and took officers on a high-speed chase, topping out at speeds of over 100 miles per hour. *Id.* During that high-speed pursuit, Jackson nearly collided with several vehicles before crashing his car and fleeing on foot. *Id.* When officers found Jackson several months later at a gas station, he brandished a firearm at them, which caused officers to discharge their service weapons. *Id.* Jackson again fled in his car, leading to yet another pursuit with the police. *Id.* Jackson again crashed his car, with his then-girlfriend and another woman inside. *Id.* When officers found Jackson, he had a firearm with a large capacity magazine attached. *Id.*

6

Jackson has a *separate* case pending in Hamilton County, Nebraska, for a similar traffic stop and drug seizure. PSR, ¶ 60. Although he was issued a citation and court summons in that case, he has yet to appear, resulting in another outstanding warrant for his arrest. *Id.*

Collectively, Jackson's string of convictions, his pending charges in New York, and his failure to appear whatsoever to face his charges in Nebraska show that his criminal history score in this case "somewhat underestimate[s] or undercount[s] the likelihood of recidivism, which is a concern." *See Politano*, 522 F.3d at 74.

Jackson's trouble with the law can be explained (though not excused) by his upbringing in a broken home with a drug-dealing father and drug-addicted mother. There was evidence of physical abuse from an early age. When Jackson was seven, his father was convicted of drug-trafficking conspiracy and sentenced to eight years of imprisonment. After his father's arrest, Jackson lived with various family members. He was sexually abused by one of his male cousins while living with his aunt. Although Jackson had a few happy years as a teenager while living with his father's fiancé, things fell apart in that relationship, and Jackson had to move in with his grandmother, whose neighborhood was riddled with drug abuse and violence. Eventually, he dropped out of high school when his mother stopped taking him to school. Put simply, Jackson had no love and even less support and stability growing up. No child should have to endure such neglect. At the same time, no adult should flout the law the way Jackson has, especially with respect to putting deadly firearms in the hands of people who cannot and should not possess them.

Jackson has a history of substance abuse, including experimentation with cocaine and ecstasy and addiction to marijuana, Xanax, and Percocet. He also has a history of mental health disorders, including ADD, ADHD, and insomnia. Although he began court-ordered mental health counseling in New York in the Summer of 2021, he stopped attending those sessions after just two weeks.

Jackson claims he has obtained his GED, but that information could not be substantiated. He has never married, though he believes he might have one child with a former girlfriend. In any event, he does not have a relationship with his former girlfriend or her son. His last gainful employment was as a cashier at a ski resort in Colorado in November 2020.

All told, nothing about Jackson's history or characteristics take this case out of the "heartland" of the firearm guideline or suggest that a variance from the guidelines range would be appropriate. If anything, his criminal history score may underrepresent his likelihood of committing future offenses.

### 3. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence

The Court must also impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence. 18 U.S.C. § 3553(a)(2)(A)-(B). The Government submits that a 51-month sentence will best serve these purposes. Illegal firearm trafficking is a serious offense—one that imposes real costs on the communities that find themselves awash in guns and related gun violence. Any sentence must reflect that seriousness, and a 51-month sentence will do just that.

8

Likewise, the goals of retribution and promoting respect for the law are important considerations in any case, including firearm-trafficking cases like this. Those same communities that find themselves awash in guns and gun violence need to hear a loud and consistent message from law enforcement officers, prosecutors, and most importantly, the courts: "we hear you, and we are doing something to help."

The same goes for deterrence—both specific and general. Jackson needs to know that what he did was wrong, and that the stakes will go up with each additional crime he commits. A 51-month sentence would be the longest prison term he has served and will hopefully deter him from future criminal activity. More importantly, other people in Jackson's shoes need to know that illegal firearm trafficking will not be taken lightly, and that prosecutors and courts will not hesitate to impose real costs on those individuals who choose to endanger the community while profiting off the black market.

### 4. The Need to Protect the Public

The Court must also consider the need for the sentence imposed "to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). Those concerns are heightened here given the nature of the offense and the role that Jackson played in arming others who are prohibited by law from possessing firearms. They are also heightened by Jackson's criminal history which, as detailed above, indicates that he has will not hesitate to endanger the lives of those around him, including his own loved ones and members of the law-enforcement community.

### 5. The Kinds of Sentences Available and the Sentencing Range for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Based on a Total Offense Level of 23 and a Criminal History Category of II, the guideline range falls in Zone D of the sentencing table. As such, "the maximum term shall be satisfied by a sentence of imprisonment." U.S.S.G § 5C1.1(f).

### 6. The Need to Avoid Unwarranted Sentencing Disparities

Finally, the Court must craft a sentence that accounts for "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Government submits that a within-guidelines term of 51 months' imprisonment will meet this goal. *See United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2018) ("The Guidelines themselves represent the best indication of national sentencing practices.").

## IV. CONCLUSION

For these reasons, the United States respectfully requests that the Court accept the parties' plea agreement and sentence Charles Jackson to 51 months of imprisonment, to be followed by a three-year term of supervised release.

Respectfully Submitted,

KENNETH L. PARKER
United States Attorney

s/Noah R. Litton
NOAH R. LITTON (0090479)
S. COURTER SHIMEALL (0090514)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Email: Noah.Litton@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Sentencing Memorandum was served electronically on all counsel of record on this 30th day of November, 2022.

s/Noah R. Litton
NOAH R. LITTON (0090479)
Assistant United States Attorney
