# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:22-CR-098(3) |
| vs. | : | JUDGE SARAH D. MORRISON |
| CHARLES L. JACKSON, et. al., | : | **Sentencing Memorandum** |
| Defendant. | : | |

CHARLES JACKSON, by and through undersigned counsel, hereby submits his Sentencing Memorandum for the March 30, 2022, sentencing hearing.

**I.     Sentencing Law**

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court formally announced the following two-step analysis that a district court should apply to determine a sentence that is sufficient, but not greater than necessary, to vindicate Congress' mandate that was codified for sentencing.  First, "a district court should begin all sentencing proceedings by correctly calculating the applicable guideline range." 553 U.S. at 49.  The Guidelines are "the starting point and the initial benchmark." Id.  Second, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requesting by a party.  Id. at 50.

The Court "may not presume that the Guideline range is reasonable." *Id.*   Rather, the Court must make an "individualized assessment based on the facts presented." *Id*.  The sentencing court is "free to make its own reasonable application of the 18 U.S.C. § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough v.*

*United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring). "[E]xtraordinary circumstances [are not required] to justify a sentence outside of the Guidelines range." *Gall* at 47.

After considering the Guidelines, the Court must then turn to Title 18 USC 3553(a) which requires the court to look at a variety of factors beyond the Sentencing Guidelines. Those factors include but are not limited to the need to promote respect for the law, the need to provide just punishment and adequate deterrence, and the need to protect the public.

## II. Guideline Calculations

The probation officer has calculated a total adjusted offense level of 23, with a criminal history category II. The advisory Guideline range is 51-60 months in prison.

## III. Discussion of §3553(a) Factors

Mr. Jackson's childhood was very unstable. His mother and stepfather raised him for the first two years of his life, and then Childrens Services got involved because he was seen with black eyes. For the remainder of his childhood he was shuttled back and forth between his mother in North Carolina, his father in New York, and various other family members. He was with his father and grandparents until he was seven, and then his father went to prison. Various family members helped out, but he was abused while he was staying with an aunt. He did not disclose the abuse until it was discovered by his father's fiancé who had stepped in and moved him back to New York. His father's fiancé provided the most stable environment of his childhood and ensured that he went to school and participated in other activities. Unfortunately her relationship with his father ended and Mr. Jackson was sent back to live with his grandmother. By the time his grandmother died, when he was 15, Mr. Jackson had been exposed to a great deal of substance abuse within the family, as well as gun violence in the surrounding neighborhood. After her death he moved back to his mother in North Carolina. His mother was

an addict with anger problems, and her household provided few if any boundaries or structure. After a year, when his father got out of prison, Mr. Jackson returned to New York. Unfortunately his father provided even less structure and parenting, so Mr. Jackson moved back to his mother. His mother soon returned him to New York. He spent most of his teenage years "couch surfing" with friends. Not surprisingly, he never finished high school.

Mr. Jackson's adult years have mirrored the instability of his childhood as he has moved around the country. He has been in a relationship for two years but has never married. Mr. Jackson's lack of guidance and structure became patently obvious itself in his late teens and twenties, when his impulsive behavior led to interactions with law enforcement and the courts. The period of 2020-2022 culminated in two significant criminal cases, including the case now before this court. Between these two cases, Mr. Jackson will spend at least most of his 30s in prison. This may be his last chance to stop the downward spiral of his youth and find a different direction.

One of his close friends, Ms. Shultz, provided meaningful insight into Mr. Jackson's life in commenting that he surrounds himself with people (including family) who "celebrate his criminal lifestyle instead of condemning his negative choices." Mr. Jackson had a very limited amount of mental health treatment in his younger years as well as more recently, but it was not enough to provide the basis for any meaningful intervention. Neither defense counsel nor Mr. Jackson disagree that continued mental health treatment is appropriate.

The government argues that Mr. Jackson is a significant part of the gun problems of cities like Rochester and Cleveland. While it may be true that he plays a role in "the gun problem," he is a small piece of a much larger problem, particularly in some communities where parental guidance is replaced by the influences of the streets and gun culture is enshrined in the modern

American dream.  In communities where people young and old feel unsafe, whether legal or not many feel the need to arm themselves for protection.  However, the ongoing mass incarceration of young black men does nothing to address the greater social problems of those communities.  "Without a proper understanding of the full complexity of the issue, and of course, the political will to take action, America is doomed to remain trapped in this same cycle of gun violence for decades to come." Pearlstein, A., April 24, 2021, *Gun Violence in America:  The Bigger Picture,* DEBAT Magazine,  https://www.debatmagazine.nl/gun-violence-in-america-the-bigger-picture/3876/.

Mr. Jackson sees that his life path is not going in a direction that offers anything positive.  He also recognizes that he has created a pile of trouble bigger than he could have imagined, and the days of reckoning are upon him.  When this case ends he has more legal problems waiting for him and for now all roads lead to prison.  This Court must fashion a sentence that reflects just punishment, and the sentence imposed must afford adequate deterrence.  The defense submits that a just sentence in this case would be accomplished through a sentence at or below the bottom of the advisory Guidelines range.  Mr. Jackson still has to deal with another case, and additional prison time is a likely outcome.  Certainly by the time he serves the two sentences (one federal and one state) his prison sentence will be appreciably larger than this Court might intend and larger than is otherwise necessary to produce a deterrent effect on Mr. Jackson.

Current data shows that long prison sentences do little to deter people from committing future crimes. Dep't. of Justice, Office of Justice Programs, Nat'l Institute of Justice, *Five Things About Deterrence* (available at http://nij.gov/five-things/pages/deterrence.aspx).  In fact, considering the severity effects in their totality, there is evidence suggesting that shorter sentences may be more of a deterrent.  A consistent finding is that increases in already lengthy

sentences produce at best a very modest deterrent effect. *Id.* In fact, lengthy prison sentences may exacerbate recidivism. *Id*. "Decisions to refrain from crime are based on the mere knowledge that the behavior is legally prohibited or for other nonlegal considerations such as morality or fear of social sanctions." In addition, "certainty of apprehension and not the severity of the legal consequence ensuing from apprehension is the more effective deterrent."

As many within the criminal justice system have now begun to recognize, the most effective method of promoting deterrence and curbing recidivism is not through imprisonment, but through changing an offender's outlook and perception of life, and equipping him with the tools needed to thrive in a disciplined community. *See*, *What Works? General Principles, Characteristics, and Examples of Effective Programs*, Ohio Department of Rehabilitation and Correction, Office of Policy and Offender Reentry, 2010 ("There is no evidence that incarceration deters subsequent criminal behavior"); 18 U.S.C. § 3582(a) ("[I]mprisonment is not an appropriate means of promoting correction and rehabilitation").

As noted in the PSR, Mr. Jackson has a longstanding history of substance abuse in addition to the abuse and neglect within his extended family. He requests the Court to recommend to the Bureau of Prisons that he participate in substance abuse treatment during his incarceration. Because his offense involves firearms, he is ineligible for receiving a reduction in his sentence for participation in substance abuse treatment.

Following whatever term of incarceration the Court chooses to impose, Mr. Jackson will be subject to all of the standard conditions of supervised release in this district as well as special conditions (such as substance abuse and mental health treatment) that the Court may choose to

impose. In all likelihood he will also be under supervision for his state case. If he violates the terms of supervised release, he may be re-imprisoned. He will be closely supervised and subject to the jurisdiction of at least two courts, allowing for very close monitoring.

Accordingly, the defense at or below the bottom of the advisory Guidelines range.

DATED this 7th day of December, 2022.

Respectfully submitted,

DEBORAH L. WILLIAMS
FEDERAL PUBLIC DEFENDER

*s/Deborah L. Williams*
Deborah L. Williams (AZ 010537)
Federal Public Defender
10 W. Broad Street, Suite 1020
Columbus, Ohio 43215
(614) 469-2999
deborah_williams@fd.org

Counsel for Mr. Jackson

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this Sentencing Memorandum was served upon Assistant United States Attorney Noah Litton, Office of the United States Attorney, 303 Marconi Blvd., Suite 200, Columbus, Ohio, via ECF, on the date of filing of this Memorandum.

/s/ Deborah L. Williams
Deborah L. Williams

Federal Public Defender