# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| -vs- | : | CASE NUMBER 2:22-CR-098 |
| ANTHONY REDMOND, | : | JUDGE SARAH MORRISON |
| Defendant. | : | Magistrate Norah McCann King |

---

### DEFENDANT ANTHONY REDMOND'S SENTENCING MEMORANDUM

---

## Introduction

This Sentencing Memorandum is submitted for this Court's consideration in fashioning a sentence that is "sufficient but not greater than necessary" to serve federal sentencing purposes. The Presentence Report provides a Guideline calculation for an Offense Level 17 and a Criminal History Category of II. This calculation provides a sentencing range of 27 - 33 57 months. The statutory maximum term of imprisonment is 5 years.

For reasons that are stated below, probation or a sentence of home confinement is recommended; or in the alternative a sentence of 1 day or a prison term of one year and 1 day.

## Case Background

Mr. Redmond is before this Court for sentencing following his plea of guilty to Count 1 of the Indictment which charged him with *Conspiracy to Deal in Firearms Without a License*, a violation of 18 U.S.C. §§922(a)(1)(A), 924(a)(1)(D), and 371.

The Statement of Facts accurately outlines the offense conduct. Mr. Redmond has accepted responsibility for the same. Mr. Redmond faces a maximum term of imprisonment of 5 years; a term of supervised release not more than 3 years; maximum statutory fine of $250,000; and a $100 special assessment. There are no outstanding objections.

**Acceptance of Responsibility**

Mr. Redmond has, without equivocation, fully accepted responsibility for his role in this offense. He makes no excuse realizing his conduct represents poor choices and an obvious lack of sound judgment. A lack of judgment attributable to his heavy use of narcotics.

**Personal Background**[1]

Anthony Redmond is 60 years old. Although he is married, he and his wife have been estranged for the past several years. He has no children.

Anthony grew up in a stable household with his parents and siblings. Faith, education, and family were hallmarks of his upbringing. Most of his siblings graduated from college or received some advanced training or education. Anthony attends the Open Door Baptist.

**Health & Sociological Issues**

The Presentence Report outlines several issues related to Mr. Redmond. They will not be repeated here. Clearly, this process has proven to be extremely stressful for him. Nonetheless, he has made remarkable strides while under pretrial supervision. He now enjoys a stability that long escaped him. His relationships have improved, he regularly attends church, and he remains gainfully employed.

---

[1] Mr. Redmond incorporates the Presentence Report's account of his educational, family, physical, social, medical, and mental health history.

**Education and Employment**

Mr. Redmond completed the 10th grade at John Marshall High School in Cleveland. GED classes are pending.

**Family & Community Support**

Mr. Redmond family and friend have been supportive of him throughout this process. They remain cautiously optimistic about his continued success.

**Sentencing factors**

*United States v. Booker*, 543 U.S. 220 (2005) makes it clear the District Court is no longer bound by the provisions of the Sentencing Guidelines. The Guidelines are but one of many factors the Court may consider in determining an appropriate sentence. Title 18 U.S.C. §3553 provides:

> **(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—**
>
> **(1) the nature and circumstances of the offense and *the history and characteristics of the defendant;***

**Nature and circumstances of the offense**

Mr. Redmond's heavy narcotic use created the perfect environment for him to fall prey to others who took advantage of his addiction to induce him to serve as proxy for these firearm purchases. He did not plan, organize, or substantially profit from the criminal activity. In addition, he did not recruit any participants or exercise any decision-making authority.

This offense was a means to support an addiction he has struggled with most of his life.

### History and characteristic of the defendant

Mr. Redmond faced challenges that began when he was 19 years old. Admittedly, many of these challenges were the product of his poor choices. He went through a cycle that had its ups and downs as he struggled to regain his footing in life. However, there are several factors which indicate his life has taken a turn for the better. As detailed within the Presentence Report, Anthony has a renewed focus on life. He has reconnected with his faith and established or reestablished relationships that have been very supportive through this process. With a renewed hope, stronger faith, and a supportive network, the future looks bright for him.

Mr. Redmond is sincerely remorseful for his criminal conduct. He now realizes how his life spiraled out of control violating the very principles his family taught him. His attitude has changed, and he has been humbled by this experience.

**(2) the need for the sentence imposed—**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

**(B) to afford adequate deterrence to criminal conduct;**

The Presentence Report provides a Guideline calculation of an Offense Level 17 and a Criminal History Category of II. This calculation provides a sentencing range of 27 to 33 months. The statutory maximum term of imprisonment is 5 years. He is statutorialy eligible for probation. Each of the sentencing factors may be fully satisfied with a sentence below the Guideline Range. Specifically, probation or a sentence of home confinement is recommended. In the alternative a sentence of one day or a prison term of one year and 1 day. The recommended sentence will reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offender, and afford both an adequate and specific deterrence to future criminal conduct.

**General Deterrence**

General deterrence in this case may be satisfied by a probationary sentence, particularly when combined with a condition of home confinement. As the Supreme Court has noted, federal probation is no mere "slap on the wrist." See, *Gall v. United States*, 552 U.S. 38, 48–49, 48 n.4 (2007) (recognizing that although custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, probationers are nonetheless subject to conditions that "substantially restrict their liberty.") These are not restrictions to be taken lightly. See, *Id*. at 48 n.4 ("[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society …. Often these conditions comprehensively regulate significant facets of their day-to-day lives . . . They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist") (citing 1 N. COHEN, THE LAW OF PROBATION AND PAROLE § 7:9 (2d ed. 1999)).

In short, a probationary sentence with a period of home confinement, under the facts of this case, would adequately address the concerns of deterrence, punishment, and public protection under 18 U.S.C. §3553(a)(2).

**Specific Deterrence**

A specific deterrence is accomplished with the recommended sentence. Prison is not the only available option. Although Mr. Redmond's compliance with pretrial supervision was initially erratic, his progress has stabilized. The threat of prison is as effective a deterrent as the actual imposition of a prison term. Because he does not want to risk the significant progress he has made since his arrest.

**(C) to protect the public from further crimes of the defendant;**

Given that Mr. Redmond has been under pretrial supervision since July 2022, it is clear he is able to be released without posing a threat to society. He

5

has been supervised remotely while continuing to reside in Cleveland. And his appearance has either been waived or presented electronically.

Ideally the risk of recidivism declines with a strong network of support and rehabilitative services. Increased age also bears a strong correlation with a lower recidivism rate. According to Sentencing Commission data, "recidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50. USSC, Measuring Recidivism: *The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 and Exhibit 9 (May 2004).

Mr. Redmond is at that age where he is more likely to <u>not</u> reoffend. Beyond his age, he also has a network of family and loved ones who are committed to assisting him in his rehabilitation. However, Mr. Redmond recognizes his network of support is not a substitute for his own commitment and effort.

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

As reflected in the Presentence Report, Mr. Redmond needs academic and vocational training. He also will need a complement of services to embrace his rehabilitative efforts. The most effective means by which to address these needs are through probation, not prison. Even the Government has concluded the facilities and programs at the Federal Bureau of Prisons are not implemented effectively, especially for inmates over 50 years old. See, e.g., U.S. Dep't. of Justice, Ofc. of Inspector General, Audit Division, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (2015).

**Efficacy of Available Sanctions**

Additionally, when considering the efficacy of the Court's sentence, it would also be more efficient for the criminal-justice sanction to be probation. According to the probation office, it costs taxpayers an average $44,256 per year

to house an inmate in the BOP. (PSR, Doc. 101, PAGEID# 526, ¶118). That number is likely much higher for someone like Anthony who is older and requires significant medical attention. Supervision at a halfway house is almost as expensive, at $35,760 per year. *Id*. Comparatively, probation supervision costs only $4,452 a year.

Probation not only saves the taxpayers more than $3,300 every month (nearly $40,000 a year), but it also serves to help alleviate other societal costs associated with imprisonment, including prison overcrowding. The BOP's inmate population increased 700% between 1980 and 2016, and the rising costs associated with that jump have—according to the DOJ itself—threatened the DOJ's ability to meet its other missions, including maintaining national security. See U.S. Government Accountability Office, *Justice Has Used Alternatives to Incarceration, but Could Better Measure Program Outcomes*, p. 1 (June 2016); see also U.S. Government Accountability Office, *Better Planning and Evaluation Needed to Understand and Control Rising Inmate Health Care Costs* (June 2017). The problem is so severe that the BOP itself has been increasing its use of prison alternatives, like home confinement, for low-risk inmates like Anthony. Id. at Executive Summary ("For low-risk and low-need inmates, home confinement is the preferred alternative according to BOP and BOP increased its use by 67 percent for minimum security inmates and 58 percent for low security inmates from fiscal years 2009 through 2015.") (Emphasis added). Congress and law-enforcement officers have also recently sought to curb these costs by transitioning certain elderly offenders out of prison and into home confinement through the First Step Act. See U.S. Dep't. of Justice, Bureau of Prisons, *Home Confinement under the First Step Act* (Apr. 4, 2019). Anthony would meet all the criteria of an elderly offender eligible for home confinement under this First Step Act pilot program, except of course the requirement of having served two-thirds of a sentence. See id., p. 3.

> **(3)    the kinds of sentences available;**
>
> **(4)    the kinds of sentence and the sentencing range established for—**
>
> > **(A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-- . . .**

The Sentencing Guidelines provide for a sentence of 27 to 33 months. The statutory maximum is 5 years. Statutorily, Mr. Redmond is also eligible for probation for a term of 1 to 5 years. As previously stated, probation or a sentence of home confinement is available and strongly recommended. In the alternative a sentence of 1 day, or a prison term of one year and 1 day should be considered.

> **(5) any pertinent policy statement—**
>
> (A)    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B)    that, except as provided in section 3742(g) [18 USCS § 3742(g)], is in effect on the date the defendant is sentenced.

Current trends point towards an attitude and philosophy that our prison populations must be reduced, particularly for non-violent offenses. The *First Step Act* of 2018 (S. 756, P.L. 115-391) and the *Fair Sentencing Act*, (S. 1789, P.L. 111-220) are recent examples. That trend continues. President Biden signed an executive order restricting the use of private prisons. His order recognized the inherent problem associated with mass incarcerations.

> More than two million people are currently incarcerated in the United States, including a disproportionate number of people of color. <u>There is broad consensus that our current system of mass incarceration imposes significant costs and hardships on our society and communities and does not make us safer</u>. To decrease

incarceration levels, we must reduce profit-based incentives to incarcerate by phasing out the Federal Government's reliance on privately operated criminal detention facilities.

<u>We must ensure that our Nation's incarceration and correctional systems are prioritizing rehabilitation and redemption</u>. Incarcerated individuals should be given a fair chance to fully reintegrate into their communities, including by participating in programming tailored to earning a good living, securing affordable housing, and participating in our democracy as our fellow citizens.

*Executive Order - President Joseph R. Biden, Jr.* published on January 26, 2021. (Emphasis added)

Such an approach would certainly fit here. Reducing the period during which Mr. Redmond is incarcerated will be consistent with this philosophy while meeting all appropriate sentencing objectives.

**(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and**

"Under 18 U.S.C. §3553(a)(6), a sentencing court is instructed to consider the need to avoid unwanted sentencing disparities among defendants with similar records. However, it is a national disparity, not a disparity between particular defendants that must be avoided." *United States v. Frazier*, No. 12-3887, 547 Fed. Appx. 729, 2013 U.S. App. LEXIS 24072, at *21 (6th Cir. Dec. 2, 2013) (citing *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008)). While statistical arguments have limits in sentencing proceedings (because the Court is sentencing a person, not a number), the Court is instructed by §3553(a)(6) to consider whether its sentence would create a disparity among defendants with similar records. Particularly helpful in this regard is sentencing data compiled and made available by the United States Sentencing Commission.

As the Court is aware, Mr. Redmond is being sentenced under U.S.S.G. §2X1.1. For Fiscal Year 2022, which is the most recent year-end data made available by the Commission, *only 13%* of nationwide offenders sentenced under

§2X1.1 (2 out of 15) received a sentence within the Guideline range, with no offenders receiving an upward departure. Additionally, 6.6% (1 out of 15) received a downward departure, and 80% (12 out of 15) received a variance. *See* United States Sentencing Commission, *Quarterly Data Report, Fiscal Year 2022*, p. 18, Table 11.5F[2]

**Recommendations**

This Court is requested to consider the following options and/or recommendations when imposing sentence:

1. That Mr. Redmond be sentenced to below the recommended Guideline calculation.

2. That Mr. Redmond receive a term of probation or a sentence of home confinement; or in the alternative a sentence of 1 day; or a prison term of one year and 1 day.

3. That if, Mr. Redmond is ordered to serve a term of imprisonment, the Court recommends the Bureau of Prisons permit Mr. Redmond to participate in any program that reduces his term of confinement.

4. That if, Mr. Redmond is ordered to serve a term of imprisonment, the Court recommends the Bureau of Prisons permit Mr. Redmond to participate in an appropriate counseling and rehabilitative programs.

5. That if, Mr. Redmond is ordered to serve a term of imprisonment, the Court recommends the Bureau of Prisons permit Mr. Redmond to be sentenced to a facility nearest to Cleveland, Ohio.

6. That if, Mr. Redmond is ordered to serve a term of imprisonment, he be permitted to self-surrender.

---

[2] This report is available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2022_Quarterly_Report_Final.pdf.

7. That the Court find Mr. Redmond does not have the ability to pay any fines or costs.

8. That the Court grant Mr. Redmond leniency.

    Respectfully submitted,

    FREDERICK D. BENTON, JR.
    A Legal Professional Association

    <u>/s/ Frederick D. Benton, Jr.</u>
    Frederick D. Benton, Jr.
    Trial Counsel for Anthony Redmond
    Ohio Supreme Court #0022800
    98 Hamilton Park
    Columbus, Ohio 43203
    (614) 732-4693
    fred@fdbentonlaw.com

**CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the forgoing pleadings was delivered via Electronic mail on this the 29th day of September, 2023 to the following:

    Noah Litton
    Courter Shimeall
    UNITED STATES ATTORNEY'S OFFICE
    303 Marconi Boulevard, Suite 200
    Columbus, Ohio 43215
    Noah.litton@usdoj.gov
    Courter.shimeall@usdoj.gov

    Emily Mueller
    UNITED STATES PROBATION OFFICE
    85 Marconi Boulevard
    Columbus, Ohio 43215
    Emily_mueller@ohsp.uscourts.gov

    Respectfully submitted,

    FREDERICK D. BENTON, JR.
    A Legal Professional Association

    /s/ Frederick D. Benton, Jr.
    Frederick D. Benton, Jr.
    Trial Counsel for Anthony Redmond
    Ohio Supreme Court #0022800
    98 Hamilton Park
    Columbus, Ohio 43203
    (614) 732-4693
    fred@fdbentonlaw.com