**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | |
| | | **CASE NO: 2:22-cr-98** |
| **v.** | : | |
| | | **JUDGE MORRISON** |
| **BRIAN R. CUNNINGHAM,** | : | |
| **Defendant.** | : | |

**<u>SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE</u>**
**<u>DOWNWARD TO THE ADVISORY GUIDELINES OF DEFENSE COUNSEL ON</u>**
**<u>BEHALF OF BRIAN R. CUNNINGHAM</u>**

### *<u>Introduction</u>*

Brian Cunningham is 44 years old. He was born in Cincinnati, Ohio on August 11, 1979, but he has resided in Ohio for all but six (6) years of his life.  Brian is the son of Herber and Norma Cunningham. His father, Herber, passed away in 2022. Brian maintains contact with his mother, Norma, who is 67 and resides in Milford, Ohio. Additionally, Brian has three siblings: Jennifer, Kelly, and Jody.  All of whom reside in Milford, Ohio, and whom he maintains relationships with.

For all intents and purposes, Brian had a blue-collar upbringing. His parents were together until his father's death. His mother was employed as a janitor, and his father was a machinist and a carpenter. Their family did activities and celebrated holidays with extended family members. There was no domestic violence or abuse. Brian grew up with love and support, as well as discipline and guidance.

In 1997, Brian married Delta Vertz. They were together close to seven (7) years until they divorced in 2004. No children were born to the marriage. Later that year, Brian met and then married Jennifer Rovito in Warren County, Ohio. Unfortunately, after one year of marriage,

they divorced. Then, in 2005, Brian left Central Ohio to work in Mississippi. The genesis of the work was the destruction caused by Hurricane Katrina. This is where he met his next wife, Kelly Peters in 2007, however, they divorced in 2009. Once again, no children were born to that marriage.

While living in Mississippi, Brian conceived a child named Aiden Cunningham. Brian was never in a relationship with Aiden's mother. Aiden's mother suffered from multiple health issues and signed custody over to Brian when Aiden was one (1) year old. Unfortunately, she passed away from complications of diabetes a few months later. Aiden has severe developmental disabilities as well as Autism. Even though Aiden is sixteen (16) years old, he has the cognitive functioning of a ten (10) year old and he most likely will never be able to care for himself. The Pre-Sentence Report did a thorough job of outlining the physical conditions that Aiden deals with, as well as his family, on a daily basis.

In 2010 Brian moved back to Central Ohio. He met and married Melissa Maggee in February 2012. They have two children: Marley, age ten (10), and Waylon, age three (3). Marley does not have any health issues. However, Waylon was diagnosed with Phelan-McDermid Syndrome (PMS). It is a rare, genetic condition resulting in moderate to severe developmental and intellectual impairment. The Pre-Sentence Report outlines part of the aspects that Brian and his wife have to deal with on a daily basis with Waylon. Waylon is seen by doctors on a regular basis for his low muscle tone, joint pain, feet deformities, and for his leg and foot braces. He is currently on a waiting list for feeding therapy as a result of his poor chewing ability and susceptibility to choking hazards. In addition, Waylon also suffers from seizures on a regular basis, and when he is sick, on an escalated basis due to his already weakened immune system. As a result, the family must watch closely for seizures when he is healthy, and his family must be

there around the clock to watch for seizures when he is sick. Brian and his family must also be diligent in regard to eyesight issues with Waylon as this syndrome can cause a quick onset of blindness. As such, Brian's wife is unable to work because of the 24/7 care that is required for Waylon. The family has worked diligently to try to find places that may be able to provide part-time care for Waylon, but they have had no luck.

Despite the medical treatment issue surrounding two (2) of the three (3) children, Brian and his wife's marriage is strong. They currently live in Marysville, Ohio, and Brian has a vast amount of support from his family. His wife has experienced Brian's sense of guilt and remorse for his conduct. She talked to Brian about their mutual concern if one of the firearms he was dealing with wound up in the wrong hands. Brian's wife is also concerned about the quality of life for her and their children, if for some reason Brian were to be incarcerated.

### *Education*

Brian did not enjoy school very much and therefore, was not a very good student. Once he completed the 10th grade, he realized that his interest was in the vocational classes. He received his GED in 1999 through the State of Ohio. Additionally, Brian did attend some college courses at Columbus State for Construction Management, however, he did not complete his degree.

### *Employment*

Unlike in school, when it came to employment Brian has always been a very hard worker and enjoys working. For most of his life he was involved in some type of construction. Brian moved to Mississippi for work purposes and was instrumental in helping to reconstruct areas devastated by Hurricane Katrina. Unfortunately, in 2008 he was the recipient of a workplace accident. As a result, he was unable to do anything for five (5) years. Eventually, Brian moved

back to Columbus and was employed in the Division of Design and Construction by the City of Columbus in 2013. In 2014, however, Brian left the City of Columbus to work as a Senior Construction Inspector for Prime AE Group, where he worked until 2022 when he had his stroke. Afterwards, he started on short-term disability and eventually received long-term disability in amount of $4,106 per month. Brian's disability does not allow him to work full-time. As such, in April 2023, Brian started The Friendly Woodshop LLC where he crafts small wooden toys and donates them to children in need. It is a nonprofit organization that Brian created to give back to the community.

### *Mental and Emotional Health*

In 2020, Brian was diagnosed with depression. He does take medication for it, but Brian believes that he needs counseling in order to deal with some of the traumatic events in his life, his children, and his physical disabilities. Brian is open to receiving mental health treatment and acknowledges that it will most likely be beneficial.

### *Physical Condition*

Unfortunately, Brian is in poor health and sees multiple physicians for various health issues. In 2008, he was the victim in a workplace accident. He had to have many surgeries on his leg as well as multiple skin grafts. He was in the hospital for quite some time, and once released, the neurologist placed him on several medications, two of which were not meant to be taken together. This mistake by his doctor caused Brian to pass out to which a neighbor found him in a field unresponsive. Brian has no memory of anything prior to that incident, and he had to go to rehabilitation to learn basic functions in life, such as walking and eating. Since then, Brian has struggled with his memory and cannot recall much prior to 2008.

In May of 2022, Brian suffered a stroke. He was treated at the Ohio State Medical Center. Brian then started therapy and unfortunately, had a second stroke in August 2022. It was discovered that Brian has a hole in his heart which enabled the doctors to diagnose why he had another stroke. Brian was diagnosed with Vertebral Artery Dissection, which is a rare cause of strokes. It happens when there is a tear in one of the blood vessels running up to the back of the neck. Brian could not have surgery to repair it, so the cardiologist has to treat it on a regular basis. The above issues cause Brian to have imbalance problems, dizziness, headaches, and nausea on a regular basis. He cannot drive or operate heavy machinery, and he has problems climbing or bending. Hopefully, his condition will improve. Brian will see the doctors again on December 1, 2023.

In addition to those severe diseases, Brian also has Hypothyroidism, elevated cholesterol, and Hypertension. He has been prescribed a multitude of medications to try to help provide some sort of stability for his health.

### *Substance Abuse*

One of the few bright spots in Brian's life is that he does not use illegal substances and has never tried them. Once every several years, he will have a drink socially. Substance-abuse is not a factor in his life.

### *Guideline Calculations*

All parties are aware that the guidelines are advisory. Defense Counsel acknowledges the base level of twelve (12), as well as the eight (8) point enhancement given the number of firearms and four (4) point enhancement for trafficking and firearms. Defense Counsel understands the correct argument made in paragraph 73 by the Probation Officer with a two (2) point enhancement for obstruction, however, the parties negotiated and as such, the Defendant

and Defense Counsel relied upon the negotiation of no two (2) point enhancement for obstruction. The Plea Agreement outlines a total offense level of twenty-one (21) yielding a basic guideline range of thirty-seven (37) to forty-six (46) months.

## *Sentencing Memorandum*

The undersigned Counsel has no doubt that this Court is well aware that under the decision of the United States Supreme Court in the case of *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are no longer binding on the Court. Instead, the Court is required to fashion a sentence without the context of 18 U.S.C. §3553(a) and impose a sentence which is sufficient but no greater than necessary to achieve the four purposes of sentencing set forth in §3553(a)(2). In imposing a sentence, the Court must consider all of the factors set forth in §3553(a)(1-7). As the honorable Court is aware 18 U.S.C §3553 (a) reads as follows:

> "(a) Factors to be considered in imposing a sentence. – The court shall impose a sentence sufficient, but no greater than necessary, to comply with the purposes set froth in paragraph (2) of this subsection. The court, in determining the *particular* sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed;
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner," (Emphasis added.)
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for –
> (5) any pertinent policy statement –
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

The purpose of the Sentencing Memorandum is not to minimize or excuse Brian's involvement, or his acknowledgement and acceptance of his responsibility. Rather, it is to provide context and to assist this Honorable Court in fashioning a sentence it deems appropriate. Counsel has already gone over the history and characteristics as they relate to Brian, and they are also laid out in the Pre-Sentence Report. Defense Counsel submits the mitigating factors proposed under §3553(a) of the following arguments are enough to allow this Court to vary downward to a probationary sentence.

### Nature and Circumstances of the Offense

The offense conduct is laid out in the Pre-Sentence Report from paragraphs 14 through 56. Brian and Defense Counsel do not have a lot of disagreements with the content contained in these paragraphs. It is important to note that Brian, once confronted, was honest and cooperative from the early stages. There was a need to act quickly in light of the fact that one of the weapons could get into the hands of violent criminals.

### Need for Sentence Imposed

Defense counsel understands that the Court must fashion a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Counsel submits that a sentence of probation for Brian would reflect the seriousness of the offense, provide a just punishment, and protect the public. The sentence is consistent with Congress's mandate as laid out by the sentencing commission and congressional directives.

The proposed punishment would put severe restrictions on Brian and would limit his liberty and freedom. There are also collateral consequences that are carried with a felony conviction that will haunt Brian for the rest of his life.

As this Court is well aware, there is no statutory minimum term of imprisonment for a violation of 18 U.S.C. §247(a)(1). The request of probation carries along with it ample authority that this sentence is an adequate punishment in this case.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court addressed the Eight Circuit Court of Appeals' reversal of a District Court's sentencing variance from thirty (30) to thirty-seven (37) months to three years of probation. The District Court Judge stressed at Gall's Sentencing Hearing that, "probation rather than 'an act of leniency' is a 'substantial restriction of freedom." *Id*. at 44 (internal citations omitted). The Supreme Court agreed, noting that:

> [w]e recognize that custodial sentences are qualitively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587,151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffen v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); internal quotation marks omitted)). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from , their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3 Most probationers are also subject to individual "special conditions" imposed by the Court.

*Gall*, 522 U.S. at 48.

### ***Seriousness of Offense/Deterrence***

If this Court were to impose a below guidelines sentence, the seriousness of Brian's actions would not be diminished, and others would learn from repeating his actions. In addressing individual deterrence, Brian has no real prior record, and has been law abiding for a majority of his life. Since the agents have been involved, Brian realized the gravity of his behavior and has been a model citizen ever since. This charge and the plea have had the positive effect of individual deterrence on Brian. A probationary sentence would also promote general

deterrence by putting other citizens on notice that the behavior and acts committed by Brian will not go unpunished in the Federal Court System.

### *Need to Protect the Public from Further Crimes*

The nature of Brian's criminal conduct is starkly juxtaposed with his law-abiding life. "It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *United States v. Edwards*, 595 F.3d 1004. 1016. N.9 (9th Cir. 2010). Any terms of Probation will be onerous and will certainly be a sufficient punishment for Brian.

The Eighth Circuit and others have repeatedly affirmed post-offense rehabilitation as a basis for downward variance from the guidelines. *United States v. Shy*, 538 F.3d 933, 938 (8th Cir. 2008). As one District Court Judge noted:

> When a defendant has demonstrated extraordinary success at rehabilitation efforts, the need for incarceration is diminished. The history and characteristics of the defendant are changed. The punishment that is 'just' is changed. The need for specific deterrence is lessened. The need for correctional programs such as psychological counseling and drug rehabilitation may be negated. The defendant's isolation and incapacitation are no longer paramount for the protection of society.

*United States v. Hasan*, No. 8:92CR12, 2009 WL 1813650 at *2, n.4 (D. Neb. June 24, 2009).

In Brian's situation, there is a demonstrated track record of compliance. Such track record goes towards Brian's rehabilitation efforts and as such, a term of incarceration is unwarranted.

### *The Need to Avoid Unwarranted Sentence Disparities*

Concerning the need to avoid unwarranted sentence disparities, it is Counsel's understanding that the Court has already sentenced various Co-Defendants in this case to a term of probation with 180 days of house arrest. The Court is well aware of the facts and circumstances regarding each Co-Defendant. As such, Defense Counsel submits that a

probationary sentence in the instant case would be commensurate with the need to avoid disparate treatment among similarly situated defendants.

## *Conclusion*

Brian has demonstrated his worthiness of a probationary sentence. He has acknowledged his wrongdoing and has accepted responsibility for his actions. It has been demonstrated to this Court that the sentence requested by Defense Counsel would not demean the seriousness of the offense. Rather, it would accomplish the principles and purposes of sending as it would serve both specific and general deterrence for future crime.

As such, Defense Counsel respectfully requests a probationary sentence with conditions put forth by the Court that Brian will comply with in every way, shape, and form.

Respectfully submitted,

/s/ *Mark C. Collins*
**MARK C. COLLINS (0061207)**
**KAITLYN C. STEPHENS (0095589)**
COLLINS & STEPHENS CO., LPA
150 E. Mound St., Suite 308
Columbus, Ohio 43215
(614) 443-3100   (614) 413-3902 – Fax
mark@mcollinslaw.com
kaitlyn@mcollinslaw.com
*Counsel for Defendant Brian R. Cunningham*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 29, 2023, I electronically filed the Sentencing Memorandum with the Clerk of Courts using the CM/ECF System, which will send notifications of such filing to the following: **Noah R. Litton, Esq.** and **S. Courter Shimeall, Esq.**

/s/ *Mark C. Collins*
**MARK C. COLLINS (0061207)**